UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN JURY,

Plaintiff,

v.

THE BOEING COMPANY,

Defendant.

No. C13-1921RSL

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendant The Boeing Company's Motion for Summary Judgment." Dkt. # 42. Plaintiff alleges that the termination of his employment from Boeing on November 3, 2010, violated the Washington Family Leave Act and the Washington Law Against Discrimination. Complaint (Dkt. # 4) at ¶¶ 4.1 and 5.1. Defendant seeks dismissal of all of plaintiff's claims on the ground that plaintiff was fired because he violated Boeing's attendance policies, not because he utilized his WFLA rights or was disabled.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)).

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

---

[1] Plaintiff's request to strike evidence related to plaintiff's use of a company credit card, sobriety issues, and/or a June 2009 corrective action memo (Dkt. # 47 at 2) is GRANTED. This information is not relevant to the issues raised in defendant's motion and is unduly prejudicial.

Plaintiff's request to strike arguments raised in and evidence submitted with defendant's reply memorandum (Dkt. # 55) is DENIED. Defendant had previously asserted that the Ninth Circuit's "negative factor" analysis should not be applied in this case: the argument was not new. With regards to the attendance audit, plaintiff submitted the audit with his response memorandum and made arguments based thereon. Defendant replied. Plaintiff does not explain why defendant should be expected to critique a document in its opening memorandum that has not yet been submitted to the Court for consideration.

**A. Washington Family Leave Act ("WFLA"), RCW 49.78 *et seq*.**

The parties agree that the WFLA mirrors the provisions of the federal Family Medical Leave Act ("FMLA") and must, therefore, be construed to the extent possible in a manner that is consistent with the federal law. Dkt. # 42 at 10; Dkt. # 47 at 1 n.1. Plaintiff alleges that Boeing impermissibly used his WFLA-protected leave as a factor in the decision to terminate him. Adverse employment actions taken against an employee for exercising rights to which he is entitled under the medical leave act are construed as a claim that the employer has interfered with plaintiff's rights under the statute. See 29 U.S.C. § 2615(a)(1); Cheeks v. Gen. Dynamics, 22 F. Supp.3d 1015, 1040 (D. Ariz. 2014). In the Ninth Circuit, an employee will prevail on an interference claim if he shows "by a preponderance of the evidence that [the] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him. He] can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1125 (9th Cir. 2001). See also Golez v. U.S. Postal Serv., 585 Fed. Appx. 365, 366 (9th Cir. 2014) (affirming judgment in favor of employer where employee failed to prove that his use of FMLA leave was "a negative factor in terminating his employment").[2]

Although it is a very close question, there is evidence from which a reasonable jury could conclude that Boeing considered FMLA-protected leave as a negative factor when it made the decision to fire plaintiff. On Monday, October 11, 2010, plaintiff's manager submitted a "Manager Intake Form" to Human Resources noting a number of unexcused absences in the preceding six weeks. Dkt. # 43-1 at 43. Human Resources reviewed plaintiff's employment records between May 3, 2010, and October 8, 2010, and found fourteen full or partial absences, including six days for which plaintiff had provided medical documentation but had not followed

[2] Defendant argues that the Court is free to pick and choose amongst the FMLA causation analyses used in various circuits and should not follow Ninth Circuit precedent on this issue. No authority is cited for this proposition.

the specified procedures for requesting FMLA leave. Dkt. # 44-1 at 47; Decl. of Kathryn Lykken (Dkt. # 44) at ¶ 8.[3] According to Boeing's records, none of the fourteen absences was covered by vacation time, sick leave, FMLA, or an approved leave of absence. Decl. of Kathryn Lykken (Dkt. # 44) at ¶ 8. Boeing deemed these absences unacceptable and terminated plaintiff's employment, citing all of plaintiff's absences, including the ones for which medical documentation had been provided, in the notice of termination. Dkt. # 44-1 at 47.

Plaintiff argues that Boeing should have realized that all of the absences for which medical documentation had been provided qualified for coverage under the FMLA and that defendant improperly counted these absences as a negative factor when determining whether termination was appropriate It is undisputed that Boeing was aware of and considered the medically-documented absences in its decision to terminate plaintiff. Dkt. # 52-1 at 23. Defendant argues, however, that those absences were not protected by the FMLA because plaintiff did not provide notice in compliance with Boeing's policies.

The Department of Labor's FMLA regulations require an employee to "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c).[4] Boeing's Leaves of Absence Policy Handbook applies to a number of types of leave, but sets forth the following procedures with regards to FMLA leave:

> If the need for leave is foreseeable, the employee must provide 30 days advance notice to the Boeing Leave Service Center through Boeing TotalAccess before an FMLA absence is to begin. If the need for the absence is not foreseeable, the employee must provide notice to Boeing TotalAccess within two business days after

[3] This calculation and the termination notice were in error: plaintiff was not absent on May 5, 2010. Decl. of Kathryn Lykken (Dkt. # 44) at ¶ 10. The correct dates of and documented reasons for the absences are set forth in defendant's memorandum (Dkt. # 42 at 8).

[4] The FMLA regulations were revised in March 2013. Citations are to the regulations that were in force at the time of the events giving rise to plaintiff's claims.

> the start of the absence or per collective bargaining agreement. If timely notice is not received, FMLA coverage will be denied, and corrective action may be taken for unexcused absences, up to and including discharge . . .

Dkt. # 44-1 at 19. Plaintiff acknowledges that he did not submit a leave request through TotalAccess regarding his May and June absences, but argues that the failure should be excused because (a) he was unaware that FMLA leave could be used for short periods of time and (b) despite having provided medical documentation to excuse the absences, he was not advised that an additional step would be necessary to have the absence covered by the FMLA.

There is surprisingly little guidance on what circumstances qualify as "unusual" for purposes of 29 C.F.R. § 825.303(c). The regulations explain that, while an employer may require employees to call a designated number or a specific individual to request leave, such requirements have to give way until an employee's "condition is stabilized and he or she has access to, and is able to use, a phone." 29 C.F.R. § 825.303(c). Courts have deemed circumstances "unusual" when the medical condition or illness prevents compliance with the normal procedures (Howard v. VT Halter Marine, Inc., 2011 WL 2414672 (S.D. Miss. June 10, 2011)), the employee is unable to access a phone (Flores v. Murphy Co., 2014 WL 584553, at *6 (D. Or. Feb. 12, 2014)), the employer's policies conflict with the law (Millea v. Metro-North R. Co., 658 F.3d 154, 161-62 (2nd Cir. 2011)), or the employer has misled the employee is some way regarding the proper procedures (Uselton v. CSX Transp., Inc., 2014 WL 4388272, at *5 (N.D. Ohio Sept. 5, 2014)). "Other courts, without invoking the unusual-circumstances exception specifically, have nonetheless excused the employee for failing to comply with the employer's procedures where a fact issue existed about whether the employee gave adequate notice of the need for leave." Villegas v. Albertsons, LLC, 2015 WL 1137415, at *7 (W.D. Tex. Mar. 11, 2015) (collecting cases).

To the extent plaintiff is arguing that an employee's subjective misunderstanding or lack of awareness of an available procedure for requesting leave, unrelated to any ambiguity in

the written policy or misstatements on the part of the employer, satisfies the "unusual circumstances" exception, he has not identified, and the Court has not found, any case law supporting that proposition. The Court declines to adopt such a rule in this case. Boeing's FMLA notice procedures were available to plaintiff, specify the procedures to be used to give notice of the need for leave, and specifically state that FMLA leave can be "taken in separate increments of time due to a single illness or injury, rather than for one continuous period of time." Dkt. # 44-1 at 18-19. Even if, as plaintiff speculates, plaintiff's managers and the reviewing Human Resources specialists were unfamiliar with the definition of "serious health condition" under the FMLA, there is no indication that they communicated with plaintiff regarding this issue or misled him in this or any other regard.

The better argument, given the facts of this case, is that plaintiff did not understand that the FMLA might apply and therefore did not realize that he needed to submit a request for leave in TotalAccess.[5] Employees are not expected to be familiar with the intricacies of the law: "[i]t is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." Xin Liu v. Amway Corp., 347 F.3d 1125, 1134 (9th Cir. 2003). Plaintiff maintains that the information he provided regarding his absences on May 3, May 4, May 6, June 1, and June 15 indicated that the FMLA applied and that Boeing failed to meet is obligations to confirm its applicability and to advise him how to obtain coverage.

Employees bear the initial burden of providing "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29

[5] In the introductory sections, the Leaves of Absence Policy Handbook defines "leaves of absence" as "all types of leaves and absences lasting more than seven consecutive calendar days." Dkt. # 44-1 at 15. The FMLA section of the handbook applies to leaves that are taken intermittently, rather than consecutively, but the employee would have to know that the leave was FMLA-qualifying in order to realize that notice of a one or two day absence had to be provided through TotalAccess. As discussed in the text, it is the employer's obligation to characterize a particular leave request as FMLA-qualifying.

C.F.R. § 825.303(b). If the employee is seeking leave to address a new FMLA-qualifying condition or illness, he "need not expressly assert rights under the FMLA or even mention the FMLA." Id. Rather, he must "explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act." 29 C.F.R. § 825.301(b). See also Bachelder, 259 F.3d at 1130 (employees "need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply"). "When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave." 29 C.F.R. § 825.303(b). As applied to this case, the regulations required plaintiff to provide information indicating that his May absences were the result of a serious health condition and that the June absences arose out of that same condition. To the extent plaintiff satisfied this initial burden, the employer's obligations to investigate and characterize the leave would come into play. Simply requesting to use accrued leave or stating that the employee is "'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. § 825.301(b) and § 825.303(b).

Plaintiff was absent on May 3 and May 4, 2010. When he returned to work, he provided a doctor's note stating that he had a cervical strain, had missed two days of work, and was cleared to return on May 5. Dkt. # 50-1 at 2. This information is insufficient to trigger Boeing's duty to investigate. "For purposes of FMLA, serious health condition entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider . . . ." 29 C.F.R. § 825.113(a). Plaintiff was not an inpatient at any point during May or June 2010, so the first part of the definition is not applicable. With regards to serious health conditions involving continuing treatment, a variety of illnesses and conditions that fall into that category are

described in great detail in 29 C.F.R. § 825.115, including:

> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> > (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist . . . ; or
> >
> > (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

As of May 5, 2010, the record shows that Boeing would have had no reason to suspect that plaintiff had missed work because of a "serious health condition" as that term is defined. The period of incapacity had lasted only two days, and none of the other categories of illness or conditions set forth in the regulations were relevant. Having no indication that the FMLA might apply to the absences, there was no obligation to inquire further or to invite plaintiff to apply for FMLA leave through TotalAccess.

Plaintiff's absence on May 6 was addressed in a second doctor's note stating, "John C Jury was seen in our office today, by Dr. Bradley Olson, for evaluation of cervical strain, upper back strain, and trapezius strain. Please excuse his absence from work or school today." Dkt. # 50-1 at 4. Again, the information provided to the employer did not satisfy the introductory clause of 29 C.F.R. § 825.115(a). Even if the May 6 absence is considered in conjunction with the May 3 and May 4 absences, the period of incapacity was not "more than three consecutive, full calendar days."

Plaintiff was subsequently absent from May 17 - May 27 and requested leave through the TotalAccess system. His doctor provided medical documentation of neck and shoulder strain and noted that the first office visit for the condition was May 3, 2010. Plaintiff's objective findings included nerve impingement in his neck and a loss of strength in his right

arm. He was released to go back to work after May 27, but advised to avoid neck extension (such as occurs when one crawls or works overhead). Follow-up treatment with a spine center was prescribed. Dkt. # 49-1 at 10-12. At that point, plaintiff had a condition that satisfied the requirements of 29 C.F.R. § 825.115, and FMLA leave was approved on June 2, 2010.

Plaintiff apparently returned to work as scheduled on Friday, May 28, but was absent on June 1. On June 15, plaintiff was again absent and submitted a note from his doctor indicating that he had a contusion on his face, a sprained knee, and C7 radiculopathy. He was released back to work "with the same restrictions to overhead work as previously stated." Dkt. # 50-1 at 11. At or about the same time, plaintiff requested that the doctor change the paperwork that had been submitted in support of his May FMLA request to extend the end date so that it covered his June 1 absence. Dkt. # 48-1 at 54. The doctor's office contacted Boeing on June 15 (Dkt. # 48-1 at 57) and was told that the change could be made over the phone (Dkt. # 48-1 at 54). Given plaintiff's recent FMLA leave, Boeing had enough information about the two June absences to know that they potentially qualified for FMLA protection. Plaintiff's doctor had notified Boeing that plaintiff's acknowledged "serious health condition" caused him to miss work through June 1, and the June 15 absence was related to treatment of that same condition. See 29 C.F.R. § 825.115(a). If Boeing needed a written amendment to the physician statement that was submitted on May 28 or more information regarding the June 15 treatment, it should have requested it or otherwise attempted to ascertain whether those absences were FMLA-qualifying.

The question, then, is whether a reasonable jury could find that these two absences were negative factors in the decision to terminate plaintiff. While there is ample evidence in the record to suggest that plaintiff would have been terminated regardless of his June absences, a reasonable jury could conclude that, having specifically remarked on the absences, they were a factor that weighed against plaintiff. See Hudson v. Home Depot, U.S.A., Inc., 2015 WL

409672, at *6 (D. Idaho Jan. 29, 2015) ("From the termination letter, which notes FMLA-protected leave as grounds for dismissal, the jury could reasonably conclude that Home Depot used the leave as a negative factor, even if plaintiff['s] other attendance occurrences would have, in theory, been sufficient for plaintiff's dismissal."). Under the Ninth Circuit's causation analysis, that is all that is required for an interference claim to survive a motion for summary judgment. As discussed in Bachelder:

> The question here is not whether America West had additional reasons for the discharge, but whether Bachelder's taking of the 1996 FMLA-protected leave was used as a negative factor in her discharge. . . . America West does not seriously contend that, even though it considered an impermissible reason in firing Bachelder, it would have fired her anyway for the other two reasons alone. Even had it made such an argument, of course, the regulations clearly prohibit the use of FMLA-protected leave as a negative factor at all. Therefore no further inquiry on the question whether America West violated the statute in discharging Bachelder is necessary.

259 F.3d at 1131. There remain material issues of fact regarding whether the June absences qualified for FMLA protection and, if so, whether Boeing considered those absences as a negative factor when deciding to terminate plaintiff's employment.

**B. Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq*.**

Plaintiff argues that his cervical strain was a "substantial factor" in the decision to terminate his employment and that Boeing failed to accommodate his disability with a short leave of absence. Dkt. # 47 at 23-24.[6] Neither claim can survive summary judgment. There is no direct or circumstantial evidence that Boeing discriminated against plaintiff because he hurt his neck or that the injury was a substantial factor in the termination decision. Plaintiff was fired because of his attendance problems. Simply listing unexcused absences on a termination notice, some of which may have been the result of a disability, does not give rise to an inference

[6] Plaintiff does not oppose defendant's motion for summary judgment on his retaliation claim.

of discriminatory motive. See Bray v. King County, 2007 WL 2138754, at *4 n.5 (W.D. Wash. July 22, 2007). Assuming, for purposes of this argument, that plaintiff can establish a prima facie case of discrimination using the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), defendant has identified a legitimate, nondiscriminatory reason for the termination, namely eight unexcused absences that had nothing to do with his cervical strain. As plaintiff acknowledges, it was those absences which prompted his manager to refer the matter to Human Resources and which ultimately led to his termination. Given the procedures used to generate the notice of termination, no reasonable jury could find that Boeing used plaintiff's attendance problems as a pretext to hide disability discrimination.

With regards to the accommodation claim under the WLAD, plaintiff has the burden of showing that (1) he had a disability, (2) he was qualified to perform the essential functions of his job, (3) the employer had notice of the disability and the limitations it imposed, and (4) upon notice, the employer failed to adopt reasonably available measures to accommodate the disability. See Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 145 (2004). Plaintiff has not raised a genuine issue of fact regarding the second or fourth elements of his failure to accommodate claim. "Essential functions" are those that are fundamental to filling a particular position, and an employee's timely and reliable presence at the job site may be an essential job function which the employer is not required to waive or alter. Davis v. Microsoft Corp., 149 Wn.2d 521, 534 (2003). Plaintiff was an assembly installer at the Everett plant, and there is no indication that this job could be performed remotely. Plaintiff was expressly required to maintain acceptable attendance as a condition of his employment and to follow certain procedures if he were going to be absent. He did not do so – most of the time for reasons unrelated to his disability – and was not, therefore, performing an essential job function.

Plaintiff appears to be arguing that he should be permitted to take time off or leave early whenever his cervical strain caused pain, without regard to the policies and procedures

governing leave. An employer need not, however, waive its attendance policies simply because an employee has a disability. Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1239-40 (9th Cir. 2012). In this case, the evidence shows that Boeing did accommodate the limitations and restrictions identified by plaintiff's doctors and granted FMLA leave whenever a properly submitted and supported request was made. There is no indication that plaintiff's cervical strain prevented him from following Boeing's attendance policies, and it was that failure which resulted in his termination. No additional accommodation was needed.

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt. # 42) is GRANTED in part and DENIED in part. Plaintiff's WLAD claims fail as a matter of law and are hereby DISMISSED. The WFLA claim may proceed.

Dated this 22nd day of April, 2015.

Robert S. Lasnik
United States District Judge